881 So.2d 711 (2004)
Robert JACKSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-3043.
District Court of Appeal of Florida, Third District.
September 9, 2004.
*712 Marshall G. Geisser, Fort Lauderdale and Matthew D. Bavaro, for appellant.
Charles J. Crist, Jr., Attorney General, and Meredith L. Balo, Assistant Attorney General, for appellee.
Before COPE, GODERICH and SHEVIN, JJ.
COPE, J.
Robert Jackson appeals his convictions and sentences. We reverse for a new trial.

I.
Defendant-appellant Robert Jackson was convicted of armed robbery. Thereafter he entered into a plea bargain whereby he pled no contest to possession of a firearm by a convicted felon and giving a false name after arrest, reserving an issue for appeal.
The victim of the armed robbery was Cornell Young, who was robbed in the parking lot of a convenience store while his friend, Charlie Green, went inside. The robber came up from behind, placed a gun at Young's back, and ordered him to get on the ground. The robber took his watch, wallet, cell phone, and bracelet. The victim did not get a good look at the robber's face, but was able to see the perpetrator's clothing.
As soon as the robber left, Young and Green flagged down a passing police officer, who happened to be a canine officer traveling with his dog. The victim pointed out two males who were walking away from the store. The canine officer gave chase.
The police dog located defendant hiding in shrubbery at a nearby house. It was between 12:30 and 1:30 in the morning. The victim's property was recovered, except for the bracelet. The police also recovered a handgun from the roof of the house where the defendant was hiding in the shrubbery.
After the defendant was apprehended, the police brought Young and Green to the scene. Green recognized the defendant, who he knew by the nickname of "E." The defendant said, "Green, I didn't know it was you all, man." TR. 157. The defendant then said, "[T]ell him I didn't do it. Tell the officer I didn't do it." TR. 158. The defendant told the police officers that he was out for a walk, but the defendant lives many miles away.
The defendant's first trial ended in a hung jury. At the second trial, the jury found the defendant guilty of armed robbery and, as stated, the defendant entered a no contest plea to the remaining charges, reserving an issue for appeal. This appeal follows.

II.
We reverse on account of an erroneous restriction on the defense cross-examination *713 of witness Green. At trial, the defendant was represented by an assistant public defender, who was assisted by a certified legal intern. The intern conducted the cross-examination of witness Green.
As may be expected of a novice, the intern conducted the cross-examination somewhat more slowly and repetitiously than an experienced attorney would have done. Several State objections were properly sustained.
The intern then attempted to cross-examine Mr. Green with his pretrial deposition testimony regarding the statement the defendant made to Mr. Green immediately after the robbery. The court sustained State objections that in asking the question, the intern had mischaracterized Mr. Green's deposition testimony. At this point the intern had cited the specific page and line of the deposition that he was referring to.
The intern then rephrased the question. Without a State objection, the court called counsel and the intern to sidebar. The court said that the intern was misstating the witness' prior testimony, that the defendant's statement at the scene of the crime was self serving, and that the question was repetitious. The court directed the intern to terminate the cross-examination entirely and refused to accept a defense proffer. Having no other alternative, the defense terminated the cross-examination as instructed.
While we understand that the court had become frustrated because the intern was having some difficulty in properly phrasing his impeachment questioning, a review of Mr. Green's deposition indicates that in this instance, the intern had asked the question properly. Mr. Green was a state witness who had testified on direct examination regarding the defendant's statements made immediately after the robbery. The defense was allowed to cross-examine with the witness' prior testimony at his pretrial deposition. See § 90.608(1), Fla. Stat. (2002).[1]
We conclude that the court erred in prohibiting the particular question from being asked, and directing the defense to terminate the entire cross-examination. While at sidebar, the assistant public defender attempted to make a proffer but the court refused to allow it. See Rozier v. State, 636 So.2d 1386, 1387-88 (Fla. 4th DCA 1994); McGriff v. State, 601 So.2d 1320, 1321 (Fla. 2d DCA 1992); Pender v. State, 432 So.2d 800, 802 (Fla. 1st DCA 1983).
Mr. Green was a material witness in the case. We are unable to say that the error was harmless. We therefore order a new trial.

III.
Since there must be a new trial, we address several issues raised by the defendant which are likely to recur in the new trial proceedings.
The defendant argues that the trial court unreasonably limited defense counsels voir dire examination of the prospective jurors. We disagree. "The scope of voir dire questioning rests in the sound discretion of the court and will not be interfered with unless that discretion is *714 clearly abused." Vining v. State, 637 So.2d 921, 926 (Fla.1994) (citation omitted).
The defense claims error over the trial court's sustaining of an objection as follows:
[DEFENSE]: ... And Mrs. Baez, you are an accounting clerk. You have heard about all the accounting scandals lately. And all the numbers have to add up, okay, in order for you to come to a conclusion.
How would you feel, if the numbers didn't add up, or say evidence didn't add up, okay, and at the end of the day, there's no science, DNA, fingerprints?
[STATE]: Objection, Judge.
THE COURT: Sustained.
TR. 59.
The ruling was within the court's discretion. The concluding part of the question attempted to extract a commitment from the juror in advance on what the juror's decision would be if there were no scientific evidence, DNA, or fingerprints. The question was especially objectionable because there was no such evidence in this case. As the Florida Supreme Court has said:
Prospective jurors are examined on their voir dire for the purpose of ascertaining if they are qualified to serve, and it is not proper to propound hypothetical questions purporting to embody testimony that is intended to be submitted, covering all or any aspects of the case, for the purpose of ascertaining from the juror how he will vote on such a state of the testimony. Such questions are improper, regardless of whether or not they correctly epitomize the testimony intended to be introduced.
Dicks v. State, 83 Fla. 717, 93 So. 137, 137 (1922).[2]
The defense next argues that the trial court erred by sustaining objections to voir dire questions about a locally notorious case known as the "River Cops Case," as well as a voir dire question about the O.J. Simpson case. These questions violated a prior order in limine, and the objections were properly sustained.
By way of background, one of the defense contentions in this case was that there had been police misconduct at the time the defendant was arrested. In considering motions in limine, a question arose regarding what voir dire questions would be allowed about the subject of police misconduct. The court ruled that the defense could ask the jurors about whether the police are capable of not telling the truth, and whether the jurors could understand that it could be a defense to the case that it was the police that did something wrong, not the defendant. While inquiry along that line would be allowed, the court ruled that the court would not allow discussion of other specific cases.
Despite the order in limine, the defense asked the potential jurors about the River Cops Case and the O.J. Simpson case. The trial court acted within its discretion in sustaining the State objection to those questions. The court had the discretion to preclude potentially inflammatory questioning about the trial of well-known athlete O.J. Simpson for murder, a case having no similarity or relationship to the instant robbery case. Similarly, the so-called *715 "River Cops" case was a factually dissimilar local murder case, and did not involve any of the officers who testified in the instant case.
As the Fourth District has said in a similar context:
Appellant also contends that the trial court erred in not allowing him to voir dire jurors about their knowledge of news reports involving corruption in the Hollywood police department. Defense counsel alleged that members of the Hollywood police department, including the officer who took appellant's confession, had been untruthful in the investigation, and that this was therefore a proper subject of voir dire.
Appellant makes no argument as to how general corruption in the police department could possibly have had any relevance in this case. The cases on which he relies, Lavado v. State, 492 So.2d 1322 (Fla.1986); Perry v. State, 675 So.2d 976 (Fla. 4th DCA 1996), rev. denied, 684 So.2d 1352 (Fla.1996), were cases in which the trial courts erred in refusing to allow voir dire about broad legal concepts, not, as was the case here, an attempt to attack the credibility of a witness with information which was clearly inadmissible in evidence. What the first district said about this type of thing in Holiday v. Holbrook, 168 So.2d 752, 753 (Fla. 1st DCA 1964) is worth repeating:
The trial judge has a duty to so direct the course of counsel's voir dire examination that the minds of the prospective jurors may not be infiltrated with ideas having no proper relation to the issue to be determined by them.
Hooper v. State, 703 So.2d 1143, 1145-46 (Fla. 4th DCA 1997) (citation omitted). The trial court had the discretion to preclude discussion of other notorious cases having no connection to the case being tried by the court. The defendant's remaining arguments relating to voir dire are disposed of by the authority already cited, or by the principle that the trial court has the discretion to curtail repetitious questioning.

IV.
The defendant argues that it was error to bifurcate the trial in this case. We conclude that bifurcation was within the court's discretion and follows established procedure for a trial of this type.
The amended information charged the defendant with armed robbery (count one), possession of a firearm by a convicted felon (count two), and giving a false name after arrest (count three). The defense moved for a severance of the armed robbery count from the remaining two counts.
The trial court denied an outright severance, and ruled instead that the trial would be bifurcated. The jury would first try count one (armed robbery) and if the defendant were convicted, the same jury would then reconvene to try counts two and three. Thus, severance was denied but bifurcation was granted.
The defendant objected to this procedure, contending that it would be unfair. After he was convicted of armed robbery, the defendant entered into a plea bargain whereby he pled no contest to counts two and three, with a reservation of the right to appeal the bifurcation issue.
Where, as here, a defendant is charged with armed robbery and possession of a firearm by a convicted felon, the charges are customarily severed so that the jury trying the armed robbery offense will not learn of the defendants status as a convicted felon. See State v. Vazquez, 419 So.2d 1088, 1090-92 (Fla.1982).
As the trial court explained, the same goal was achieved here by bifurcation. *716 During the trial of the armed robbery charge, the jury did not learn that the defendant has a prior felony record. The jury's interrogatory verdict found the defendant guilty of robbery with a firearm.
The jury's verdict established that the defendant possessed a firearm. On the charge of possession of a firearm by a convicted felon, the only remaining issue was whether the defendant was a convicted felon. The defendant declined to stipulate that the trial judge could determine the existence of the prior convictions, so the defendant was entitled to have a jury determination that he was a convicted felon. See U.S. v. Gaudin, 515 U.S. 506, 522-23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); State v. Harbaugh, 754 So.2d 691, 694 (Fla.2000).
For the second phase of the bifurcated trial, the State was prepared to place its fingerprint expert on the stand. The expert would testify that the defendant's fingerprints matched the fingerprint cards from the defendant's prior felony convictions. Based on that testimony, the jury would make the factual determination whether the defendant was a convicted felon. However, the second phase of the bifurcated trial became unnecessary when the defendant entered his plea.
The trial judge explained that he ordered the bifurcated procedure because that is a procedure which has been judicially approved for trials under two analogous statutes: prosecutions for felony driving under the influence ("DUI") and felony petit theft.
In State v. Harbaugh, 754 So.2d 691 (Fla.2000), the Florida Supreme Court outlined the bifurcated procedure to be followed in felony DUI trials. Under the DUI statute, felony DUI occurs if a person "is convicted of a third violation of this section [316.193] for an offense that occurs within 10 years after a prior conviction for a violation of this section...." § 316.193(2)(b)1., Fla. Stat. (2003). In the first stage of the bifurcated trial, the jury decides whether the defendant was driving under the influence at the time of the current arrest. If the jury returns a verdict of guilt in this first stage, then the jury reconvenes for the State to prove the existence of the defendant's three prior DUI convictions. Id. at 694. Thus bifurcation is the approved procedure in a situation that is analogous to the present case.
In Smith v. State, 771 So.2d 1189 (Fla. 5th DCA 2000), the Fifth District explained that the same procedure applies in prosecutions for felony petit theft. Under the theft statute, "[a] person who commits petit theft and who has previously been convicted two or more times of any theft commits a felony the third degree...." § 812.014(3)(c), Fla. Stat. (2003). Following Harbaugh, the Fifth District held that in such prosecutions, there must be a bifurcated procedure. During the first stage of the trial, the State must prove that the defendant committed the current theft with which the defendant is charged. If the jury finds the defendant guilty, then the jury reconvenes to hear evidence of the defendant's prior theft convictions. Smith, 771 So.2d at 1191.
The trial court reasoned that the same procedure is equally applicable to the present case, when the defendant was charged with armed robbery and possession of a firearm by a convicted felon. The court thus employed the same bifurcated procedure.
The defendant argues that the procedure is unfair because the defendant is unable to ask the jury in voir dire whether they will hold it against the defendant that he has prior felony convictions. The defense contends that the defendant should be able to ask such questions, but in a *717 bifurcated procedure, cannot do so without disclosing the existence of the prior convictions to the jury.
The Florida Supreme Court has rejected this exact claim in the context of the capital punishment statute. In capital cases, there is a two stage bifurcated trial. The first phase is the guilt phase. If the defendant is convicted, this is followed by the penalty phase. The same jury is used for both. Melton v. State, 638 So.2d 927, 929 & n. 3 (Fla.1994). The Florida Supreme Court said:
Melton argues that he was entitled to separate guilt and penalty phase juries so he could conduct an effective voir dire about prospective jurors' opinions on imposing the death penalty if a defendant has a prior murder conviction. The trial judge denied Melton's motion to empanel separate juries, and defense counsel chose not to question jurors about the possible effect of a prior murder conviction.
This Court has rejected the argument that separate juries should be empaneled for the guilt and penalty phases of all capital trials. Riley v. State, 366 So.2d 19, 21 (Fla.1978). Jurors must be able to follow the law as given by the trial judge, which includes following the judge's instructions to weigh aggravating and mitigating factors. Melton's prior convictions constitute an aggravating factor that the jurors were instructed to weigh. The record before us shows that the jurors empaneled in Melton's case said during voir dire that they could follow the law. Melton is not entitled to relief on this issue.
Melton, 638 So.2d at 929 (citation and footnotes omitted); see also Head v. State, 253 Ga. 429, 322 S.E.2d 228, 231-32 (1984). We reject the defendant's argument on authority of Melton.

V.
Because we are reversing for a new trial, it is not necessary for us to reach the defendant's claim that it was fundamental error for a certified legal intern to participate in defendant's trial without there being a signed consent form in the court file. See Duval v. State, 744 So.2d 523 (Fla. 2d DCA 1999), review dismissed, 753 So.2d 564 (Fla.2000), and cases cited therein; cf. Smith v. State, 866 So.2d 51 (Fla.2004) (no fundamental error where record is silent on whether venire was sworn).
The remaining points on appeal need not be addressed.
Affirmed in part, reversed in part, and remanded for a new trial.
NOTES
[1] The court said, in part, "what the defendant said at the scene or at any time, is a self serving statement, it's hearsay." TR. 177. The court was making the point that the defendant's own statement to Mr. Green is admissible hearsay when offered by the State against the defendant, see id. § 90.803(18), but inadmissible hearsay if offered by the defendant. However, once the State elicited Mr. Green's testimony, the defendant was entitled to a fair opportunity to cross-examine it.
[2] The judge did allow the defense to rephrase the question as follows:

[DEFENSE]: If the numbers don't add up, you have no problem with rendering a not guilty verdict. If the numbers don't add up, and you saw, okay, you are an accountant, and the balance sheets didn't come up.
MS. BAEZ: Right, I understand that. No, it has to be accurate. It has to add up.
TR. 59-60.