35 So.3d 183 (2010)
Roberto Paz RIVERO, Appellant,
v.
STATE of Florida, Appellee.
No. 3D08-2572.
District Court of Appeal of Florida, Third District.
June 2, 2010.
*184 Carlos J. Martinez, Public Defender, and Amy Weber, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Ansley B. Peacock, Assistant Attorney General, for appellee.
Before WELLS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
ROTHENBERG, J.
We affirm Roberto Paz Rivero's convictions for burglary of an unoccupied structure, petit theft, and felony criminal mischief based on our findings that: the DNA evidence and related testimony were sufficient to support the finding that the defendant committed the burglary; and the trial court did not abuse its discretion in limiting defense counsel's voir dire, or commit manifest error by failing to strike a juror for cause.

THE CIRCUMSTANTIAL DNA EVIDENCE
The defendant asserts that the circumstantial DNA evidence found at the crime scene was insufficient to rebut his reasonable hypothesis of innocence. The defendant correctly notes that circumstantial evidence, such as DNA evidence and fingerprints, "may support a conviction only if it is consistent with guilt and inconsistent with any reasonable hypothesis of innocence." State v. Law, 559 So.2d 187, 188 (Fla.1989).
We also agree with the defendant that where the State relies on circumstantial evidence found at a crime scene to establish the defendant's identity, the circumstances must be such that the evidence could have been left only at the time the crime was committed. Tirko v. State, 138 So.2d 388, 389 (Fla. 3d DCA 1962). However, where fingerprints or other evidence is found in an area generally not open to the public, we have upheld convictions in circumstantial evidence cases. For example, this Court found in Rosario v. State, *185 406 So.2d 106 (Fla. 3d DCA 1981), a circumstantial evidence case, that the defendant's fingerprints, which were found on liquor bottles located behind the bar of a burglarized restaurant, in an area where the public had no access, were sufficient to support the finding that he had committed the burglary. Similarly, this Court affirmed the conviction of a defendant whose fingerprint was found "in an obscure, private part" of a burglarized dental office where the dentist testified that he had never before seen the defendant and had no records of having treated him as a patient. Summerson v. State, 200 So.2d 594, 595 (Fla. 3d DCA 1967).
The defendant's appellate counsel contends that the trial court should have granted the trial court's motion for judgment of acquittal because the State did not prove that the DNA evidence (blood) linking him to the burglary was collected from an area that was inaccessible to the public. The defendant's appellate counsel argues that although the defendant's DNA was collected from glass from a window broken to gain entry to the bakery, there was no evidence that the defendant's DNA was collected from the inside of the window. Because the outside of the window was accessible to the public, appellate counsel claims the circumstantial evidence was insufficient to establish his guilt. In support of this argument, appellate counsel cites to clearly established law that holds that where the State's case is based solely on circumstantial evidence, and the circumstantial evidence is a fingerprint found on the outside of a window of a vehicle or a building and on items within a business in an area open to the public, the evidence is insufficient to establish the defendant's guilt as a matter of law. See, e.g., C.E. v. State, 665 So.2d 1097 (Fla. 4th DCA 1996) (reversing a defendant's conviction because it was undisputed that his fingerprints were found on the exterior of a burglarized vehicle and such circumstantial evidence was not inconsistent with his reasonable hypothesis of innocence).
The cases the defendant's appellate counsel relies on are inapplicable and her arguments are without merit because in this case, contrary to the representations made in the appellate brief, the record reflects that the DNA (blood evidence) linked to the defendant in this case was collected from the inside of a window at the burglarized bakery, the point of entry of the burglary, in an area of the bakery admittedly not accessible to the public.
Various witnesses testified at the defendant's trial that they observed blood on the inside of a window that was smashed during the burglary, and otherwise established that the DNA collected at the scene and which was linked to the defendant was collected from the inside of the window. The owner of the bakery testified that he observed blood and small hairs on the broken glass, and that he boarded up the outside of the window with plywood. The plywood was still in place when the crime scene investigator arrived to collect the DNA evidence. The owner also testified that he had never before seen the defendant.
The owner's son-in-law, who arrived very early in the morning following the burglary, testified that although the window of the bakery had been shattered, much of the glass was still affixed to the frame. He testified that he observed what appeared to be blood on a piece of glass still affixed to the window, on the inside of the window. He stated that the plywood remained in place on the outside of the window from the morning after the burglary through the time the investigator swabbed the window, and he watched the investigator swab the inside of the window to collect the DNA sample.
*186 The responding police officer testified that he examined the window from the inside of the oven room and saw blood on the inside of the window. He further stated that he observed blood on the floor of the bakery. Finally, the crime scene investigator testified that, from the inside of the bakery, he swabbed several pieces of broken glass from the windowsill and floor that appeared to be stained with blood.
Thus, contrary to the arguments made by the defendant's appellate counsel in the initial brief and at oral argument, there is record evidence that the defendant's DNA was found and collected from the inside of the window of the bakery, which was smashed during the burglary, in a room not accessible to the public. Thus, based on the totality of this evidence, we conclude that the State presented sufficient evidence to rebut the defendant's reasonable hypothesis of innocence.

JURY SELECTION
The defendant contends that the trial court abused its discretion in limiting his voir dire of the jury. We disagree. While it is entirely proper for a lawyer to ask questions that test whether a juror can properly accept physical and testimonial evidence, and a lawyer may inquire into juror bias concerning the defendant's defense, a lawyer is not permitted to pretry his or her case. Jackson v. State, 881 So.2d 711, 714 (Fla. 3d DCA 2004).
The defendant also alleges that the trial court committed manifest error in refusing to strike a juror, Mr. Romero, for cause. We note that two very different "Original" transcripts of the voir dire and jury selection proceedings were submitted to this Court. The first "Original" was filed with this Court on April 20, 2009. The second "Original" was filed by the defendant as a "supplemental record" on September 17, 2009. Both contain certifications from the same court reporter certifying that the transcript is "a true and complete record" of the stenographer's notes of the proceedings, and both certifications are dated March 30, 2009. These two certified "Original" transcripts of the same proceedings are remarkably different.
The discrepancy relevant to this appeal is that the first "Original" transcript reflects that defense counsel exercised a peremptory challenge to Mr. Romero, which the trial court denied, noting that defense counsel had already exhausted his six peremptory challenges. The second "Original" transcript states that after defense counsel's peremptory challenge to Mr. Romero was denied, defense counsel moved that he be excused for cause, which was also denied.
Although it has not yet been determined which transcript accurately reflects the proceedings below, we conclude that even if the second "Original" transcript is correct, which states that defense counsel raised a cause challenge after his peremptory challenge was denied, it does not support the grounds raised by defense counsel in moving that Mr. Romero be stricken for cause. The grounds raised were that Mr. Romero: (1) "was one of the ones who raised his hand if he would need the defense to prove something," and (2) had been the victim of a home burglary. Being the victim of a burglary, without more, is not grounds for a cause challenge, and there is no record evidence that Mr. Romero raised his hand in response to defense counsel's question. The question posed by defense counsel was as follows:
Now the defense in this case is that Mr. Paz Rivero is innocent. DNA match has nothing to do with him committing any burglary or grand theft charges committed [sic]. Now when you hear that in hearing that [sic] do you need for me *187 to  from the defense do you need to hear proof of how this DNA evidence got there? Who does? [J]uror 10, Ms. Forster, Ms. Gonzalez. Keep your hands up please.
The record reflects that the State objected to this question, the trial court sustained the objection, a side-bar conference was conducted, and then the trial court explained to the jury that it was the State's burden of proof, the burden never shifted to the defense, and if the State did not prove beyond a reasonable doubt that a crime was committed and the defendant committed the crime, they must find the defendant not guilty. The trial court then asked the jurors to raise their hand if they were going to want or need for the defendant to do anything  call witnesses or present any evidence  and explained that it was important that they be truthful and raise their hand. After this explanation, Mr. Fletcher raised his hand to tell the judge that when the question was originally asked, he raised his hand because it was only natural to want to know how the DNA got there, but after the court's explanation, it made more sense. He further stated that the defense did not have to do anything, the defendant was innocent until proven guilty, that is the way the system works, and after hearing the court's explanation, he would put aside his natural inclination to want an explanation.
The only juror who indicated that she could not follow the trial court's instructions was Ms. Forster, who stated: "It's not going to change my mind if I feel one way [sic] he doesn't explain [sic] it's not going to change my mind."
There is no record evidence that Mr. Romero was one of the jurors who initially responded to defense counsel's question and he clearly did not raise his hand after the trial court's explanation and instruction to the jurors to raise their hand if after hearing the court's explanation they would want or need the defense to submit any evidence or prove anything.
The law regarding cause challenges is clear. "It is within a trial court's province to determine whether a challenge for cause is proper and the trial court's determination of juror competency will not be overturned absent manifest error." Fernandez v. State, 730 So.2d 277, 281 (Fla.1999); Van Poyck v. Singletary, 715 So.2d 930, 931 (Fla.1998). The trial court's unique vantage point in determining juror competency and a challenge for cause is also established law. Morrison v. State, 818 So.2d 432, 442 (Fla.2002); Mendoza v. State, 700 So.2d 670, 675 (Fla.1997); Leon v. State, 396 So.2d 203, 205 (Fla. 3d DCA 1981). Additionally, a juror's nonverbal behavior, which was not observed by the trial court, or otherwise supported by the transcript, cannot be the proper basis to support a challenge to a juror. See Dorsey v. State, 868 So.2d 1192, 1197, 1202 (Fla.2003). Thus, even if defense counsel raised a cause challenge to Mr. Romero, we find no manifest error in the denial of the challenge.
Affirmed.
SCHWARTZ, Senior Judge, specially concurring in part.
I heartily agree with affirmance. Indeed, I doubt that this wretched appeal, from which Mr. Anders himself would recoil with disgust, should be dignified by anything more than a PCA. However, since an opinion has been written, and while it is obvious that the defendant's motion for directed verdict was properly denied, I think the Court's reliance on the cases which involve the location of the defendant's fingerprints which (although only in legal theory) could have been innocently left on the outside of the site of a *188 break-in is misplaced. In contrast, Rivero was identified by blood which was obviously the result of a cut on the broken window through which he entered the premises. Since that is the case, it doesn't matter whether it was found on the outside or inside of the pieces of shattered glass.